IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ALFREDO MAYSONET-GALARZA<br><br>    Plaintiff<br><br>v.<br><br>BUREAU OF PRISONS, *et al.*,<br><br>    Defendants | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 5:22-CV-62-RWS-JBB<br>§<br>§<br>§<br>§<br>§ |

**ORDER**

Before the Court is the Report of the United States Magistrate Judge (Docket No. 22) recommending dismissal of this case as frivolous and Plaintiff Alfredo Maysonet-Galarza's objections (Docket No. 23). Plaintiff, a prisoner of the Federal Bureau of Prisons proceeding *pro se*, filed this action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), complaining that the Federal Bureau of Prisons and former Federal Correctional Institution—Texarkana Warden Salmonsen violated his constitutional rights. Docket No. 1. Plaintiff subsequently moved for leave to file an amended complaint to add current FCI—Texarkana Warden Johnston. Docket No. 17. The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636.

**I. Background**

Plaintiff's original complaint asserts that he and other sex offenders are being discriminated against because of their offenses. *See generally* Docket No. 1. After he arrived at FCI—Texarkana in 2019, he says that other inmates ordered him out of the TV room and told him he was not allowed in there, and in the dining hall other inmates gave him orders as to where to sit. *Id.* at 8–9. When he asked other inmates about this, he learned that it was because he was a sex offender. *Id.* at 9.

Plaintiff says he also learned that job opportunities throughout the institution are limited by sex offender status. *Id.* For example, he says that the commissary supervisor does not employ sex

offenders, while the food service department does employ sex offenders but only in certain positions such as sanitation or janitorial. *Id.* at 10. He states that an officer named Easter, apparently a kitchen supervisor, says that no sex offender will ever be a cook, so Plaintiff cannot be a cook even though he has culinary arts training while the inmates assigned as cooks do not. *Id.* Easter once fired all of the sex offenders working in the kitchen, accusing them of stealing food, but no report was ever made. *Id.* Plaintiff states that he is now the only sex offender working on the kitchen floor, because another officer rehired him on condition that his position be in the dishroom away from that officer's area. *Id.* Plaintiff states that Lt. Bowery told him that the institution had policies prohibiting such actions as the exclusion of sex offenders from TV rooms, but that the policy was not going to be enforced. *Id.* Bowery also told him that his sentence forced him to agree with "unwritten policies" which may be enforced by inmates. *Id.* at 10–11.

According to Plaintiff, he was not particularly concerned with his job, the dining hall, or the weight area in the gym, but he did want to watch TV. *Id.* at 11. He says that to do so, he had to stand in the hall and look through the window in the TV room. *Id.* Only three inmates could stand at the window and there are more sex offender than non-sex offender inmates, so it was difficult to get a spot. *Id.* He says that he filed what he describes as an "inquiry," but never received a response. *Id.* He was later moved to Unit B, which had three TV rooms, but sex offenders were not welcomed in any of them. *Id.* at 12. Although the institution has rules governing TV rooms, Plaintiff said that the rules were not followed, and the officials ignore the violations. *Id.*

Plaintiff states that when he sought relief through the grievance process, officials tried to persuade him to give up the issue. *Id.* at 12–13. He tried to file a tort claim, but the response from the Bureau said that he had been afforded an opportunity to name the inmates denying him access to the TV room but that he had refused to cooperate, which was not true. *Id.* at 13.

In a motion to expand the record, which the Magistrate Judge construed as a supplemental complaint, Plaintiff described an incident on December 30, 2022, in which he went to the laundry area to exchange his bedsheets but there was no one at the drop-off area. *See generally* Docket No. 3. As soon as he dropped off his sheets, an inmate came out and yelled at him, saying that because he, the other inmate, did not see Plaintiff dropping off his sheets, Plaintiff would not get anything. *Id.* at 2. The inmate at the exit gave Plaintiff a new set of sheets, but the inmate who had yelled at him demanded their return, telling Plaintiff that sex offenders "have to pay to get anything around here." *Id.* When Plaintiff refused, the inmate tried to grab the sheets, but Plaintiff evaded him and returned to his unit area. *Id.* The laundry officer did not intervene. *Id.*

Later that day, Plaintiff says that this inmate and two others came to his bunk and attacked him. *Id.* He heard the inmate from the laundry tell the other that he, Plaintiff, was the sex offender who wants to enter the TV room. *Id.* at 4. He says that he wondered about this because he had not told anyone about his case. *Id.* Plaintiff's cellmate told him that a member of a gang called the Tango had said that reporting the incident would trigger another beating. *Id.*

Nonetheless, Plaintiff tried to call the "report a crime" phone number, but when he finally got through, the person to whom he spoke did not seem interested in taking a report. *Id.* He was finally told that he would receive a call-out for an interview, but he never did. *Id.* Plaintiff says that "this is what happens to sex offenders" and that Bureau staff is indifferent to violent attacks on sex offenders by other inmates. *Id.* at 5.

In a motion to amend his complaint, Plaintiff says that Warden Salmonsen could have ended this treatment but chose not to, even though he told the warden about the situation. *See generally* Docket No. 17. There is now a new warden, Johnston, but Plaintiff says that the situation has not improved but become worse. *Id.* at 2. He says that Warden Johnston has issued a bulletin prohibiting loitering in the hallways, but standing by the window in the corridor is on the only way

he can watch TV. *Id.* He sent Warden Johnston communications to this effect but received no reply. *Id.* Plaintiff asks that Johnston be added to the lawsuit as a defendant. *Id.* He also complains that a chapel officer named Pete has expressed disdain for sex offenders and harasses any sex offender who seeks to exercise a right to religion, and that an officer named Galloway scolded him for wearing a rosary even though members of other faiths are allowed to wear their religious symbols. *Id.* at 3. Plaintiff says that his release date is October 5, 2025, and he was supposed to be placed in a residential reentry center in February of 2025, but the center refused to accept him because he is a sex offender. *Id.*

## II. The Report of the Magistrate Judge

On June 13, 2025, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed. Docket No. 22. The Magistrate Judge correctly stated that the Supreme Court has recognized only three circumstances in which *Bivens* claims can arise: (1) an unlawful search and arrest by federal law enforcement officials, (2) a sex discrimination claim brought by a congressional staff member, and (3) the failure to provide medical care to a person in federal custody. *Id.* at 6. The Supreme Court has stated that extending *Bivens* to new contexts is "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotations omitted).

Instead, as noted by the Magistrate Judge, the inquiry as to whether a claim may be pursued under *Bivens* has two steps. *Id.* at 6–7. First, the court determines whether the claim presents a new *Bivens* context. *Id.* Second, if it does present a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. *Id.* Under this factor, a *Bivens* action should not proceed where there is any rational reason to think that Congress is better suited to make that determination. *Hernandez v. Causey*, 124 F.4th 325, 331–33 (5th Cir. 2024),

citing *Egbert v. Boule*, 596 U.S. 482, 486 (2022)). The Magistrate Judge also looked to *Looper v. Jones*, slip op. no. 22-40579, 2023 U.S. App. LEXIS 23892 at *5, 2023 WL 5814910 at *2 (5th Cir. 2023), in which Delores Looper sued the Federal Bureau of Prisons and several prison officials claiming that they were deliberately indifferent by failing to protect her son from a lethal attack by his cellmate. The Fifth Circuit concluded that this claim fell outside of the three recognized *Bivens* causes of action and that extending *Bivens* was not appropriate. *Id.*

The Magistrate Judge also cited *Sheldon v. Underwood*, No. 3:19-cv-2041, 2021 U.S. Dist. LEXIS 55793, 2021 WL 1110707 (N.D. Tex. Feb. 22, 2021), *R&R adopted* 2021 U.S. Dist. LEXIS 5432213, 2021 WL 1102089 (N.D. Tex. Mar. 23, 2021) and *Stroud v. Warden, USP- Lewisburg*, No. 1:22-cv-515, 2022 U.S. Dist. LEXIS 216092, 2022 WL 17340626 (M.D. Pa., Nov. 30, 2022), in which inmates of the Federal Bureau of Prisons complained of various types of discrimination against sex offenders. Both courts concluded that *Bivens* should not be extended to the claims presented in those lawsuits. *See generally* Docket No. 22 at 8–9.

The Magistrate Judge further observed that the Fifth Circuit has held that a court may not fashion a *Bivens* remedy if Congress has already provided, or authorized the Executive to provide, an alternative remedial structure. *Id.* at 9. Several courts have recognized the Bureau of Prisons' administrative remedy program, as such an alternative process, forecloses expansion of *Bivens*. *See, e.g.*, *DePute v. United States*, No. 3:24-cv-273, 2024 WL 5379047 (N.D. Tex., Dec. 23, 2024), *R&R adopted*, 2025 WL 391735 (N.D. Tex., Feb. 4, 2025); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020); *Mack v. Yost*, 968 F.3d 311, 320 (3rd Cir. 2020); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018).

The Magistrate Judge therefore recommended that the lawsuit be dismissed as frivolous and for failure to state a claim upon which relief may be granted unless Plaintiff amends within 30

days so as to set out cognizable claims under *Bivens* or such other law or statute as may be applicable. Docket No. 22 at 10–12.

**III. Plaintiff's Objections**

Plaintiff first asserts that the Supreme Court only "cautioned" against extending *Bivens* to new contexts but did not prohibit such. Docket No. 23 at 1. He argues that there are several factors which are meaningfully different, including the fact that the treatment of sex offenders is not a localized issue exclusive to FCI—Texarkana, but rather is ubiquitous in the Bureau of Prisons—it is for this reason that Plaintiff says he requested an injunction to end the practice. *Id.* at 2. He says that almost one-half of the approximately 1121 inmates in Texarkana are sex offenders, while some 2,544 inmates in the Bureau of Prisons are sex offenders. *Id.* Thus, Plaintiff says that "this action is meaningfully different as it represents all sex offenders in the BOP's custody, not just those incarcerated at FCI—Texarkana, or myself, for that matter." *Id.* However, Plaintiff has not requested class action status, nor has such status been granted.

Plaintiff next argues that while the Magistrate Judge said that prescribing a cause of action is for Congress rather than the courts, the stigma attached to sex offenders means that no member of Congress will advocate in their favor or enact any bill to improve their situation or ban this type of treatment. *Id.* at 3. Thus, he contends that sex offenders must rely on the courts for relief. *Id.*

After stating that *pro se* complaints are held to a less stringent standard and that neither the defendants nor the Department of Justice have denied the allegations, Plaintiff goes on to posit that while inmates must exhaust available administrative remedies, they need not exhaust unavailable ones. *Id.* at 4. He is scheduled to be released on October 9, 2025, and so the amount of time it would take to exhaust administrative remedies renders the process unavailable. *Id.*

Finally, Plaintiff sets out the law concerning supervisory liability and provides a lengthy unsourced quote, apparently from a case called *Riley v. Williams*, No. 1:14-cv-3780, 2015 WL

6955491 (N.D. Ill., Nov. 9, 2015), saying that he has stated a cognizable cause of action concerning his conditions of confinement even though he may not have personally linked the warden to each and every deprivation. *Id.* at 5–6.

## IV. Discussion

As the Magistrate Judge correctly stated, the Supreme Court has cautioned against extending *Bivens* to new claims outside of the three recognized *Bivens* causes of action. This principle was recently reaffirmed in *Goldey v. Fields*, 606 U.S. 942 (2025), in which inmate Andrew Fields, a prisoner of the Federal Bureau of Prisons, complained that prison officials used excessive force against him while he was in solitary confinement. The U.S. District Court for the Western District of Virginia held that Fields' excessive force claims represented a new *Bivens* context and that the relevant factors counseled against extending *Bivens* to these claims, including the fact that Congress has failed to provide a damages remedy for federal prisoners despite sweeping reforms of prisoner litigation, the long-standing commitment of the federal courts to avoid judicial intervention in the running of prisons or matters of security within prisons, and alternative remedies exist within the prison and through the Federal Tort Claims Act. *Fields v. Fed. Bureau of Prisons*, No. 7:22-cv-00021, 2023 WL 1219334, at *6–7 (W.D. Va. Jan. 31, 2023). Thus, the district court dismissed Fields' lawsuit. *Id.* The Fourth Circuit reversed this determination, holding that extending *Bivens* to Fields' claims against the individual officers involved in the alleged uses of force was appropriate. *Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 276 (4th Cir. 2024).

On certiorari review, the Supreme Court reaffirmed that recognizing a new cause of action under *Bivens* is "a disfavored judicial activity." *Goldey*, 606 U.S. at 944. The Court stated that this case arises in a new context and that special factors counsel against recognizing an implied *Bivens* cause of action for Eighth Amendment excessive force violations. *Id.* The Court observed that

Congress has actively legislated in the area of prisoner litigation but has not enacted a cause of action for monetary damages, and that extending *Bivens* to allow an Eighth Amendment claim for excessive force could have "negative systemic consequences for prison officials and the inordinately difficulty undertaking of running a prison. *Id.* In addition, an alternative remedial structure already exists for aggrieved federal prisoners, and the existence of such a structure counsels against allowing *Bivens* suits even if such procedures are not as effective as an individual damages remedy. *Id.*

The factors identified by the Supreme Court in *Goldey* likewise counsel against extending a *Bivens* remedy here. Congress has not enacted a cause of action for monetary damages, whether for claims of excessive force or discrimination based on sex offender status, and extending *Bivens* to such discrimination claims could have negative systemic consequences relating to the operation of a prison. The fact that Plaintiff believes it unlikely that Congress will enact such a remedy does not mean that the decision should be made by the judiciary rather than Congress. An alternative remedial structure exists for such claims through the Bureau's administrative remedy procedure. Plaintiff has not set out any viable basis for extending *Bivens*, particularly in light of the Supreme Court's decision in *Goldey*, and his objections are without merit.

**V. Conclusion**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that the Plaintiff's objections (Docket No. 23) are **OVERRULED** and the Report of the Magistrate Judge (Docket No. 22) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled civil action is **DISMISSED WITH PREJUDICE** as frivolous or for failure to state a claim upon which relief may be granted. Plaintiff may move for leave to amend his complaint within 30 days of the date of receipt of this order so as to set out cognizable claims under *Bivens* or such other law or statute as may be applicable.

**So ORDERED and SIGNED this 12th day of August, 2025.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE